**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas Neely, | No. CV17-8235-PCT-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| National Cart Co., Inc.; Win-Holt Equipment Corp.; and Wal-Mart Stores, Inc., | |
| Defendants. | |

Plaintiff Thomas Neely asserts products liability and negligence claims against National Cart Co. Inc. ("National"), Win-Holt Equipment Corp. ("Win-Holt"), and Wal-Mart Stores Inc. ("Wal-Mart"). Doc. 1. National and Win-Holt move for summary judgment. Doc. 100. The motion is fully briefed (Docs. 105, 112), and oral argument will not aid in the Court's decision. *See* Fed R. Civ. P. 78(b).[1] For the following reasons, the Court will deny the motion.

**I.   Background.**

Plaintiff alleges that he was injured in January 2016 at a Wal-Mart store in Prescott Valley, Arizona, while making deliveries for a beverage distribution company. Doc. 1 at 2-3. According to the complaint, Plaintiff's duties involved placing bottled drinks onto a large cart, called the ST-Rocket Cart, to restock shelves around the store. *Id.* at 3.

---

[1] Wal-Mart opposes summary judgment for National and Win-Holt. Doc. 110.

Plaintiff was pulling the ST-Rocket Cart behind him one day, loaded with hundreds of pounds of bottled drinks, when the cart collided into the back of his right heel and its unguarded, sharp steel caused severe damage to his leg and Achilles tendon. *Id.* at 4-5.

Plaintiff, National, and Win-Holt agree on the following facts. National and Win-Holt are producers and vendors of the ST-Rocket Cart for Wal-Mart, but Wal-Mart had final decision-making power related to the cart's design. Subtle differences exist between the ST-Rocket Carts supplied by National and Win-Holt, but they perform substantially the same. Wal-Mart's Prescott Valley store has around 51 ST-Rocket Carts produced by National and Win-Holt. Plaintiff cannot remember whether he was using a National- or Win-Holt-made ST-Rocket Cart during the incident, and he remembers nothing distinctive about the cart he used. There is no longer surveillance footage of the incident, nor any evidence of whether Plaintiff was using a National- or Win-Holt-made cart. Docs. 106-1-3; 101 at 1-3.

National and Win-Holt assert that the ST-Rocket Cart was designed by Wal-Mart alone and that Wal-Mart owns the patents for the ST-Rocket Cart. Doc. 101 at 1. According to National and Win-Holt, Wal-Mart contacted its manufacturers and directed them to produce the ST-Rocket Cart according to its design specifications. *Id.* at 2.

Plaintiff disputes that Wal-Mart was the sole designer, and asserts that Wal-Mart collaborated with National and Win-Holt in the cart's design except for certain parameters that Wal-Mart set. Doc. 106 at 2. He also disputes that the patents Wal-Mart owns describe the ultimate ST-Rocket Cart design. *Id.* Plaintiff asserts claims for strict liability product design and negligent product design against all three Defendants, and negligence against Wal-Mart alone. Doc. 1 at 2-8.

**II. Legal Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence,

viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III. Summary Judgment.

#### A. Arizona Law.

Strict liability for defective product design exists where a plaintiff can prove (1) the defendant is a manufacturer of the product, (2) the product was defective in design and unreasonably dangerous, (3) the defect existed when the product left the defendant's control, (4) the defect proximately caused the injury, and (5) damages. *Cox v. Ford Motor Co.*, No. 1 CA-CV 09-0288, 2010 WL 3656041, at *2 (Ariz. Ct. App. Sept. 21, 2010); *see also Sw. Pet Prods., Inc. v. Koch Industr., Inc.*, 273 F. Supp. 2d 1041, 1051 (D. Ariz. 2003); *Anderson v. Nissei A SB Mach. Co., Ltd.*, 3 P.3d 1088, 1092 (Ariz. Ct. App. 1999). Under a strict products liability theory, "the manufacturer can be held liable 'despite its best efforts to make or design a safe product.'" *Golonka v. Gen. Motors Corp.*, 65 P.3d 956, 962 (Ariz. Ct. App. 2003). But "liability will not be imposed on an entity that 'bears[s] no causal connection to the production or distribution of the product.'" *Atone v. Greater Ariz. Auto Auction*, 155 P.3d 1074, 1076 (Ariz. Ct. App. 2007).

To establish a negligence claim, including negligent design, a plaintiff must prove "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007). "'In order to succeed on a negligent design claim, a plaintiff must prove that

the manufacturer acted unreasonably at the time of design . . . in light of the foreseeable risk of injury from use of the product.'" *Hess v. Bumbo Int'l Tr.*, CV 13-944 TUC DCB, 2014 WL 12527216, at *7 (D. Ariz. Sept. 11, 2014) (citing *Golonka*, 65 P.3d at 962). "Negligence may consist of action or inaction" – it is "the failure to use reasonable care" or "act as a reasonably careful person would act under the circumstances." *Id.* (quoting *Golonka*, 65 P.3d at 963).

### B. Discussion.

National and Win-Holt argue that they are not subject to strict or negligent product liability because Wal-Mart had ultimate decision-making authority on the ST-Rocket Cart's design, and Plaintiff cannot show that they were in a joint venture with Wal-Mart to design the cart. Docs. 100 at 6; 112 at 2. Plaintiff responds that National and Win-Holt are manufacturers under A.R.S. § 12-681(3) and are subject to liability because they worked collaboratively with each other and Wal-Mart to design the cart. Doc. 105 at 7-9, 11, 14.[2]

#### 1. Liability as Product Designer.

A product liability action "means any action brought against a manufacturer or seller of a product for damages for bodily injury, death or property damage." A.R.S. § 12-681(5). A "manufacturer" means an "entity that *designs*, assembles, fabricates, produces, constructs or *otherwise prepares a product or component part* of a product before its sale." A.R.S. § 12-681(3) (emphasis added). "Thus, by statute in Arizona, a designer is subject to strict liability for a design defect." *Burlington N. & Santa Fe Ry. Co. v. ABC-NACO*, 906 N.E. 2d 83, 91 (Ill. App. Ct. Mar. 31, 2009). In this case, National and Win-Holt are subject to strict liability if they "design[ed] . . . or otherwise prepare[d]" the ST-Rocket Cart or its "component part[s]" before sale to Wal-Mart. *See* A.R.S. § 12-681(3).[3]

---

[2] National and Win-Holt argue that Plaintiff cannot establish causation because he cannot prove which of them manufactured the cart that caused his injury. Doc. 100 at 4. Plaintiff agrees, and therefore did not allege defective manufacturing claims. His complaint alleges defective product design. *See* Docs. 101 at 3; 106 at 3; 1 at 1-6.

[3] The parties do not cite, and the Court has not found, any Arizona case holding that entities involved to varying degrees in product design are subject to strict liability. But the

- 4 -

National and Win-Holt contend that Plaintiff's defective and negligent design claims fail because he cannot show that they were in a joint venture with Wal-Mart and had "equal right of control" over the design. Docs. 100 at 6; 112 at 3. But Plaintiff does not rely on a joint venture theory of liability. *See* Docs. 1, 105. He instead claims that National and Win-Holt are liable in their own right as designers of the cart. National and Win-Holt argue that they did not truly design the ST-Rocket Cart because Wal-Mart had final decision-making authority, but the statute does not require them to be a sole designer or to have control over the ultimate design. *See* A.R.S. § 12-681(3).

National and Win-Holt argue that *Dillard Department Stores, Inc. v. Associated Merch. Corp.*, 782 P.2d 1187 (Ariz. Ct. App. 1989), shows that "an entity with no control over the product cannot be liable under strict product liability." Doc. 112 at 4. In *Dillard*, the Arizona Court of Appeals held that "a broker which neither sold, manufactured, distributed, nor had any ownership or control over a product and which made no profit from its sale but [only] brought the manufacturer and seller together" was not subject to strict products liability. 782 P.2d at 1188, 1192-93. *Dillard* involved a luggage strap defectively made by an unknown manufacturer, not defective design. *Id.* at 1188. The Court of Appeals' discussion centered on whether the broker was like a seller and is inapposite here. *Id.* at 1191. The court did not discuss § 12-681(3) or a product designer's liability.[4]

In sum, Plaintiff alleges that National and Win-Holt actively participated with Wal-Mart in the defective design of the ST-Rocket Cart and therefore are designers subject

---

meaning of A.R.S. § 12-681(3) is clear, and the Court notes that Arizona cases have "extended strict liability to a variety of enterprises that do not fit a common notion of manufacturer or seller," recognizing that "strict product liability of an enterprise does not turn upon a precise definitional usage of [those] term[s]." *Unique Equip. Co., Inc. v. TRW Vehicle Safety Sys., Inc.*, 3 P.3d 970, 976 (Ariz. Ct. App. 1999) (collecting cases); *see also Torres v. Goodyear Tire & Rubber Co.*, 786 P.2d 939, 943 (Ariz. 1990); *Bullock v. Zimmer, Inc.*, No. CV 10-334-PHX-SRB, 2010 WL 11515474, at *3 (D. Ariz. June 8, 2010) (collecting cases).

[4] Defendants also cite the Restatement (Second) of Torts § 404, Comment A, which states that an independent contractor is not liable for manufacturing a product that is defectively designed, unless the defect "is so obviously bad that a competent contractor would realize that there was a grave chance that his product would be dangerously unsafe." Doc. 112 at 5. But the comment concerns a non-designing manufacturer.

to liability under § 12-681(3). Defendants cite no authority requiring Plaintiff to show that they were in a joint venture with Wal-Mart to design the cart. As alleged designers of the cart, National and Win-Holt may be strictly liable under Arizona law. The Court will not grant summary judgment on this basis.

### 2. Evidence of National and Win-Holt's Design Involvement.

National and Win-Holt argue that the evidence shows Wal-Mart was the sole designer. Docs. 100 at 6; 112 at 3. But the record shows a dispute of fact regarding whether National and Win-Holt were active and collaborative design participants.

Muriel McSweeny, the senior fixture buyer of material-handling and a Wal-Mart employee for over 30 years, testified to the following. *See* Doc. 116-1 at 3, 4 (under seal). Other than three of Wal-Mart's specifications, changes to the ST-Rocket Cart (from an earlier design) were the result of collaboration between Wal-Mart, National, and Win-Holt, including the swivel casters placement and design of the pull handle. *Id.* at 6-7, 10. When Wal-Mart received design-change suggestions from its internal safety department, it would contact National or Win-Holt and discuss how to incorporate the idea into the design. *Id.* at 8.

Dennis Salcedo, chief engineer of Win-Holt, testified to the following. *See* Doc. 106-2 at 2, 10. While designing the ST-Rocket Cart, National and Win-Holt submitted versions of a label, and Wal-Mart used National's pictogram and Win-Holt's text. *Id.* at 10. After hearing of injuries related to a prior cart model, Win-Holt suggested a safety latch to Wal-Mart, which was incorporated into the design. *Id.* National then reviewed the safety latch suggestion and offered a different version of the same concept. *Id.* Win-Holt and National communicated regarding the ST-Rocket Cart's design. *Id.* at 10-11.

Robert Unnerstall, Jr., President of National, testified to the following. Doc. 106-4 at 3. The decision to put the swivel castors at the edge of the cart was a collaborative decision between the three entities. *Id.* As part of the re-design effort, Wal-Mart asked National to design the ST-Rocket Cart's handle. *Id.*

Plaintiff's evidence suggests that National and Win-Holt communicated with each other and with Wal-Mart regarding design changes, that many differences between the AL and ST-Rocket Cart were the result of collaboration between the three entities, and that some of National and Win-Holt's design suggestions were incorporated into the cart's design. A dispute of fact exists about whether National and Win-Holt designed the ST-Rocket Cart with Wal-Mart. The Court will deny Defendants' summary judgement motion.[5]

**IV. Motions to Seal.**

Pursuant to the parties' protective order (Doc. 44), National and Win-Holt have jointly filed a motion to seal two pages of a deposition attached as Exhibit 4 to their statement of facts (Doc. 102), and Exhibits 1 and 7 of their response to Plaintiff's separate statement of facts (Doc. 114). Redacted versions of the exhibits are filed on the docket. The lodged pages include information about Wal-Mart's business dealings, and the Court finds compelling reasons for sealing them. *See Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 677-78 (9th Cir. 2010). For the same reasons, the Court will grant Plaintiff's motion to seal. Doc. 116.

Wal-Mart also moves to file under seal unredacted versions of several exhibits to its statement of facts, filed in opposition to National and Win-Holt's summary judgment motion. Docs. 108, 109. The lodged documents contain confidential and proprietary information about Wal-Mart, but the Court did not consider Wal-Mart's motion and attached materials and will deny the motion to seal.

---

[5] Defendants argue that even if they are subject to liability as designers, Plaintiff must still show which manufacturer's cart hit him. Doc. 112 at 9. This argument was not raised in National and Win-Holt's original motion for summary judgment and cannot be asserted for the first time in a reply brief. *See Gadda v. State Bar of Cal.*, 511 F.3d 933, 937 n.2 (9th Cir.2007); *Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837 n.6 (9th Cir.2004). The Court also notes, however, that no material differences exist between their carts – a point Defendants concede. Thus, regardless of whose cart actually hit Plaintiff, the evidence at trial may show that both National and Win-Holt were designers of the cart. The Court makes no determination about the specificity with which Plaintiff must prove each Defendant's involvement in the design, but it would seem Plaintiff must show that a Defendant helped design a feature of the cart that caused his injury.

**IT IS ORDERED**:

1. Defendants' motion for summary judgment (Doc. 100) is **denied**.

2. The pending motions to seal filed by National Cart Co. and Win-Holt Equipment Corporation (Docs. 102,114, and 116) are **granted**, but Wal-Mart's motion to seal (Doc. 108) is **denied**. The Clerk is directed to accept for filing under seal the documents lodged on the Court's docket at Doc. 103, Exhibits A and H to Doc. 106, and Doc. 115, keeping the existing document numbers.

3. The Court has set a telephone conference with the parties to set a final pretrial conference and trial date for **August 20, 2019 at 4:30 p.m.** Counsel for Plaintiff shall initiate a conference call to include all counsel and the Court. If a dial-in number is to be used, counsel for Plaintiff shall provide the dial-in number to all counsel and the court no later than August 21, 2019 at 12:00 noon.

Dated this 5th day of August, 2019.

_David G. Campbell_
David G. Campbell
Senior United States District Judge